UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GERALD K. CHEATHAM,

    Plaintiff,

v.                                                         Case No. 8:10-cv-864-T-23AEP

FLORIDA PAROLE COMMISSION,

    Defendant.
_____/

**O R D E R**

    Cheatham's complaint under 42 U.S.C. § 1983 alleges that his civil rights were violated when the Florida Parole Commission ("Commission") suspended setting a presumptive parole release date ("PPRD").  The Commission moves (Doc. 13) to dismiss the complaint as time-barred, which motion Cheatham opposes.  (Doc. 17) Cheatham is entitled to no relief because the complaint is barred by the applicable limitation.

    Because Section 1983 contains no limitation, the state's four-year limitation for a personal injury claim governs a Section 1983 claim.  *Wilson v. Garcia*, 471 U.S. 261, 276-79 (1985); *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) ("Florida's four-year statute of limitations applies to such claims of deprivation of rights under 42 U.S.C. §§ 1983 and 1985."), *cert. denied*, 540 U.S. 1219 (2004).  Cheatham's claim arose in 1997, more than twelve years before he commenced this case.

In 1982 Cheatham was convicted of second degree murder and sentenced to life imprisonment. (Commission's Exhibit A) After serving ten years in prison Cheatham was paroled, which was revoked three years later in 1996. (Commission's Exhibit B) At that time Cheatham's presumptive parole release date was set for October, 1997. (Commission's Exhibit C) Cheatham was denied release and the Commission suspended setting another PPRD. Subsequent reviews from 2001 through 2009 concluded with the Commission continuing the suspension of a PPRD. (Commission's Exhibits D - G) Cheatham's next review is scheduled for 2014.

The Commission contends that Cheatham's four-year limitation commenced in 1997 when the Commission suspended setting another PPRD. In his opposition (Doc. 17 at 4) to the motion to dismiss, Cheatham recognizes—based on the statute of limitation—the futility of challenging all but the most recent suspension of a PPRD. The latest suspension occurred in 2009. Cheatham contends that, based on *Wilkinson v. Dotson*, 544 U.S. 74, (2005), his complaint timely challenges the 2009 suspension of a PPRD.

*Dotson* affords Cheatham no relief. In separate Section 1983 cases, Dwight Dotson and Rogerico Johnson challenged the constitutionality of Ohio's parole procedures. Both cases were dismissed because the plaintiffs should have pursued their claims in a petition for the writ of habeas corpus instead of a civil rights complaint. The circuit court reversed and determined that a civil rights complaint was the proper remedy. *Dotson* reviews *Preiser v. Rodriguez*, 411 U.S. 475, 489, 93 S.

Ct. 1827, 36 L. Ed. 2d 439 (1973), *Wolff v. McDonnell*, 418 U.S. 539, 554, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), *Heck v. Humphrey*, 512 U.S. 477, 481, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), and *Edwards v. Balisok*, 520 U.S. 641, 648, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997), the cases that created the tension between civil rights and habeas corpus remedies. *Dotson* holds that a civil rights complaint is appropriate if relief will neither shorten the duration of confinement nor invalidate the legitimacy of confinement (brackets original):

> Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement–either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody. Thus, *Preiser* found an implied exception to § 1983's coverage where the claim seeks–not where it simply "relates to" — "core" habeas corpus relief, i.e., where a state prisoner requests present or future release. Cf. *post*, at 1254 (Kennedy, J., dissenting) (arguing that *Preiser* covers challenges that "relate . . . to" the duration of confinement). *Wolff* makes clear that § 1983 remains available for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner. *Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success would necessarily imply the unlawfulness of a (not previously invalidated) conviction or sentence. And *Balisok*, like *Wolff*, demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of (not previously invalidated) state confinement. These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration.

> Applying these principles to the present case, we conclude that respondents' claims are cognizable under § 1983, *i.e.*, they do not fall within the implicit habeas exception. Dotson and Johnson seek relief that will render invalid the state procedures used to deny parole eligibility (Dotson) and parole suitability (Johnson). *See Wolff, supra,* at 554-555, 94 S. Ct. 2963. Neither respondent seeks an injunction ordering his immediate or speedier release into the community. *See Preiser*, 411 U.S., at 500, 93 S. Ct. 1827; *Wolff*, 418 U.S., at 554, 94 S. Ct. 2963. And as in *Wolff*, a favorable judgment will not "necessarily imply the invalidity of [their] conviction[s] or sentence[s]." *Heck, supra*, at 487, 114 S. Ct. 2364. Success for Dotson does not mean immediate release from confinement or a shorter stay in prison; it means at most new eligibility review, which at most will speed consideration of a new parole application. Success for Johnson means at most a new parole hearing at which Ohio parole authorities may, in their discretion, decline to shorten his prison term. *See* Ohio Rev. Code Ann. § 2967.03 (Lexis 2003) (describing the parole authority's broad discretionary powers); *Inmates of Orient Correctional Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 236 (C.A.6 1991) (same); *see also* Tr. of Oral Arg. 18 (petitioners' counsel conceding that success on respondents' claims would not inevitably lead to release). Because neither prisoner's claim would necessarily spell speedier release, neither lies at "the core of habeas corpus." *Preiser, supra*, at 489, 93 S. Ct. 1827. Finally, the prisoners' claims for future relief (which, if successful, will not necessarily imply the invalidity of confinement or shorten its duration) are yet more distant from that core. *See Balisok, supra*, at 648, 117 S. Ct. 1584.

Contrary to Cheatham's contention *Dotson* announced no new rule. A prisoner was not preluded as a matter of law from using Section 1983 to challenge parole procedures before *Dotson*. Instead, *Dotson* reviewed the twenty-year evolution of using Section 1983 to challenge state or institutional procedures used to reach a decision—as compared to challenging the actual decision—whether a prisoner is entitled to release.

The Commission correctly argues that Cheatham's contention is foreclosed by *Lesley v. David*, 186 Fed. App'x 926 (11th Cir. 2006), *cert. denied*, 549 U.S. 1120 (2007). Like Cheatham, Arlen Lesley waited many years before challenging the Commission's decision.

> According to his 2005 complaint in the district court, Lesley was convicted of murder in 1976 and was to be eligible for parole after twenty-five years imprisonment. During an interview in June 1999, officials noted a 1973 firearms charge, which had been brought out during Lesley's trial, and changed the parole date to November 2005. In July 1999, the Commission instituted new, harsher parole guidelines, resulting in a new parole date of November 2030 and a re-interview date for parole consideration of April 2004. Lesley learned of the application of the new, harsher parole guidelines, his 2030 parole date, and the 2004 re-interview date in 1999. Lesley was interviewed again in 2004, but the tentative parole date remained the same.

*Lesley*, 186 Fed. App'x at 927-28. The district court dismissed the complaint as time-barred because "Lesley knew or should have known of his claim when he was interviewed in 1999 and that each subsequent parole reconsideration was not a separate injury." 186 Fed. App'x at 928. The circuit court agreed and rejected, 186 Fed. App'x at 929, Lesley's argument that a new limitation commenced with each decision by the Commission:

> Here, Lesley knew of the November 2030 parole date and April 2004 re-interview date in 1999. Yet, he waited six years before filing his federal claim in 2005. Therefore, his claims relating to the Commission's actions in 1999 were untimely. [FN1]
>
>> FN1. Lesley's argument regarding *[Dotson]* does not change our conclusion. *[Dotson]* merely holds that a § 1983 action is an appropriate vehicle for

- 5 -

> Lesley's claim. It does not address the standards applicable to timeliness decisions.

The circuit court also rejected both Lesley's claims that his rights were violated under the *ex post facto*, due process, and equal protection clauses and his claim that Florida's statutes create a protected liberty interest, 186 Fed. App'x at 929, arguments that Cheatham also erroneously asserts.

Accordingly, the Commission's motion to dismiss (Doc. 13) is **GRANTED**. The civil rights complaint (Doc. 1) is **DISMISSED** as time-barred. The clerk shall close this case.

ORDERED in Tampa, Florida, on February 4, 2013.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE